## WAYNE COUNTY NAT. BANK v. KNEELAND et al.

No. 7528—Opinion Filed Nov. 14, 1916.

(161 Pac. 193.)

**1. Bills and Notes—Alteration—Effect as to Bona Fide Holder.**

Prior to the passage of the Negotiable Instruments Law (effective June 10, 1909 [Laws 1909, c. 24]), a material alteration of a promissory note by the payee, without the consent of the maker, avoided it against such maker, even in the hands of a holder in due course.

**2. Alteration of Instruments—Materiality—Test.**

The test as to whether an alteration of a note is material does not depend upon the consequent increase or decrease of the maker's liability, but upon whether the instrument has the same operation and effect after the alteration that it had before.

**3. Same — Estoppel — Equitable Estoppel— Pleading—Necessity.**

If the holder of an instrument materially altered without the knowledge or consent of the maker relies upon a subsequent ratification by or estoppel in pais against such maker, the ratification or estoppel must be pleaded.

(Syllabus by Bleakmore, C.)

Error from District Court, Alfalfa County; J. C. Robberts, Judge.

Action by the Wayne County National Bank against G. N. Kneeland and others. Judgment for defendants, and plaintiff brings error. Affirmed.

H. J. Sturgis, for plaintiff in error.

Parker & Simons and Garber & Kruse, for defendants in error.

Opinion by BLEAKMORE, C. The parties appear, and are referred to here as in the trial court. On March 22, 1904, defendants executed and delivered to Bell Bros. six promissory notes each for the principal sum of $1,000. Plaintiff subsequently became the holder thereof, and in December, 1908, commenced action thereon in the court below. Defendants answered, alleging among other defenses as to each of said notes that:

"After these defendants had made, executed, and delivered said note, the same was fraudulently and materially changed and altered in this, to wit: That the word 'eight' has been added and written in said note immediately above the word 'six,' which word 'six' was erased at the time of the execution and delivery of said note by these defendants, said change and alteration having the effect of making said note one drawing interest at 8 per cent. per annum, while the note as signed and delivered by these defendants drew no interest, and that said alteration was made without the knowledge or consent of these defendants, and for the purpose of defrauding them."

To the foregoing defense plaintiff replied by way of general denial. There was trial to a jury, resulting in verdict and judgment for defendants, and plaintiff has appealed.

As presenting an epitome of the evidence, we quote from the brief of plaintiff as follows:

"It would not be possible, in a brief of this character, to set out this testimony in full or even an abstract thereof. It will be sufficient to show the general character of this testimony as the several witnesses substantially agreed in their testimony. The first witness offered by the defendant, J. J. McCully, testified, in substance: That in the spring of 1904 one W. C. Ditmars came to Helena with two horses that were kept at his barn, and sought to negotiate the sale of them to the farmers living in that vicinity. A preliminary contract was presented to these farmers for signature, in which they agreed to take stock to the amount of $200 each, the purchase price of each horse being $3,000. This preliminary contract provided that the notes should be $1,000 each, due in two, three, and four years, with interest at eight per cent.; that after the necessary signatures had been obtained to the preliminary contract, notes were presented to the subscribers for their signature, and that the notes at

the time of signature, where the word 'six'
appeared printed in the body of the notes,
and provided for interest at the rate of 6
per cent. per annum, had been erased, and
there was no rate of interest written above
it, and that in the conversation preliminary
to the execution of the contracts and notes
Ditmars and Samuel Bell had both stated
that the notes were to be without interest; 
that he signed the note at the office of George
Kneeland, one of the defendants; that he ex
amined the note at the time and that the
word 'eight' was not written therein. Other
of the defendants who testified say that the
notes did not contain the word 'eight' writ-
ten above the erasure signed by them at their
homes when presented by Mr. Ditmars in
company with the defendant Geitgey and the
defendant Zimmerman. The defendants also
offered the testimony of one M. W. Denning-
er, who testified substantially that he was the
cashier of the bank at Helena for some time
after the execution of these notes, and that
some time in the summer of 1904 these notes
were presented to him at his bank by W. C.
Ditmars, for the purpose of having the bank
purchase them; that at that time the notes
did not bear any rate of interest, and were
then in the possession of Ditmars. The
plaintiff offered the testimony of Samuel Bell
who testified that he wrote the body of the
notes; that he prepared them at the request of
Ditmars and Geitgey, and that the same were
prepared for the preliminary contracts which
had been signed by the purchasers; that that
contract provided that the rate of interest
should be 8 per cent., and the time to be two,
three and four years instead of one, two, and
three years, as was his custom in the sale of
horses of this class; that he erased the word
'six' and wrote the word 'eight' above it in
each of said notes, and that after their execu
tion they were left in the hands of Ditmars
and two of the defendants, Geitgey and Zim-
merman, who were entitled to a commission
out of the proceeds of the notes for effecting
the sale, and that the same were not de-
livered to him until nine or ten months after-
wards, when they were delivered to him at
Wooster, Ohio, and that at the time they were
received they provided for interest at the
rate of 8 per cent. per annum; that after the
notes were prepared by him they were de
livered to Ditmars, Geitgey, and Zimmer-
man to procure the signatures of the pur-
chasers; that he saw the notes after they were
executed, and they were then in the same con
dition that they are at this time."

Plaintiff complains of the giving of the
following instructions:

"You are instructed that if you find by a
preponderance of the evidence in this case
that when the notes sued on were originally
executed and delivered to Bell Bros., the word
'six' had been erased or crossed out in such
a way as to leave the notes to read 'with in-
terest at          per cent. per annum,' and
that after the execution and delivery of said
notes they were altered or changed without
the knowledge, authority or consent of the

defendants, so as to read 'with interest at
eight per cent. per annum,' such a change
would be a material alteration, and said
notes would be void in the hands of the plain-
tiff, and your verdict should be for defend-
ants."

Prior to the passage of the Negotiable In-
struments Act (effective June 10, 1909), a
material alteration of a promissory note by
the payee, without the consent of the maker,
avoided it as against the maker, even in the
hands of a bona fide holder without notice
of such alteration. See Citizens' Bank of Ra-
mona v. Grant, 52 Okla. 256, 152 Pac. 1082,
where the authorities are collated.

The test as to whether an alteration of a
note is material does not depend upon wheth-
er it increases or decreases the maker's lia-
bility, but upon whether the instrument has
the same operation and effect after the al-
teration as it had before. Citizens' State
Bank of Ramona v. Grant, supra; Common-
wealth Nat. Bank v. Baughman, 27 Okla. 175,
111 Pac. 332; International Bank of Coal-
gate v. Mullen & Mullen, 30 Okla. 547, 120
Pac. 257, Ann. Cas. 1913C, 180; German-
American Bank v. Hennis, 54 Okla. 146, 153
Pac. 671.

Plaintiff insists that if there was an alter-
ation of the note, it was not the act of the
plaintiff or its assignor, but that of a strang-
er, amounting to a mere spoliation, and re-
covery may still be had according to the
original terms of the instrument. There can
be no contention as to who changed the notes
from their original form and wrote therein
the word, "eight," as Bell, a member of the
payee firm, testified that he himself so altered
the same. In Commonwealth Nat. Bank v.
Baughman, supra, it is said:

"The jury was instructed that if, after the
execution of the note, the alleged alteration
was made by any person without the knowl-
edge or consent of defendant, such alteration
vitiated the note. This stated the rule too
broadly to the extent that it declares that a
material change made in the note by any
person vitiates it. The rule prevailing in
the courts of the United States is that, if a
stranger without any complicity with the
payee or holder of the note changes its terms,
such change is a spoliation, and does not
vitiate the note. It is only when the terms
of the note are changed by a party thereto
that the same may be termed an alteration,
and result in avoiding the note. Andrews v.
Calloway, 50 Ark. 358, 7 S. W. 449; Daniel on
Negotiable Instruments, par. 1373. We do
not think, however, that the error committed
in this instruction was prejudicial, for there
was no contention about who made the
change in the terms of the note. All the
evidence is that the word 'ten' was struck out

by Generes, the payee, and the word 'eight' inserted by him. The conflict in the testimony is as to when said change was made. The evidence of plaintiff is that it was before the execution of the note, and the evidence of the defendant is that it was done afterwards. There was no contention by either party that the change was made by a stranger to the note."

Upon the foregoing authority we are constrained to hold that the giving of the above instruction did not constitute prejudicial error.

Plaintiff also insists that by making certain payments on the notes—some of which were applied to the satisfaction of interest at the rate of 8 per cent. per annum—and by retaining possession of the horse, for the purchase price of which the notes in suit were given, defendants waived the right to rely upon an alteration of such notes, and must be held to have ratified and adopted the same as altered. It will be noted, in this regard, that neither in its petition nor reply did the plaintiff plead any facts or circumstances tendering such issue of ratification or estoppel. Recovery was sought on the notes in their original, unaltered form, as they were alleged to have been executed by defendants. The alteration thereof was specifically set forth and relied upon as a defense in the answer, and was denied by the reply. There was no offer by the plaintiff at the trial to amend the petition or reply so as to present the question of ratification or estoppel. And in its brief plaintiff states:

"The only question presented to the jury was whether there had been a material alteration of the notes after their execution and delivery to Bell Bros."

In 1 R. C. L. 1050, it is stated:

"If the holder of an instrument materially altered without the knowledge or consent of the maker relies upon a subsequent ratification by or estoppel in pais against such maker, the ratification or estoppel must be pleaded."

We regard this as a correct statement of the rule applicable. Capital Bank v. Armstrong, 62 Mo. 59; Erickson v. Bank, 44 Neb. 622, 62 N. W. 1078, 28 L. R. A. 577, 48 Am. St. Rep. 753.

"In order for a party to avail himself of the doctrine of estoppel as constituting a part of his cause of action or defense, he should plead the facts constituting the estoppel." Nance v. Okla. Fire Ins. Co., 31 Okla. 208, 120 Pac. 948, 38 L. R. A. (N. S.) 426.

Plaintiff also complains of the giving and refusal of certain instructions. It is not deemed necessary to set forth the charge of the court, nor the instructions requested by plaintiff and refused. It is sufficient to say that we have carefully examined the same, and hold that those given fairly stated law, and there was no error in the refusal to give those requested.

Again, it is contended by plaintiff that it is entitled to a reversal of the judgment herein on account of the misconduct of opposing counsel in making improper statements to the jury. It does not appear that objection to such remarks was made at the time, or that the attention of the trial court was directed thereto. Under such circumstances, plaintiff, having failed seasonably to object to such conduct in the trial court, will not be permitted to predicate error thereon in this proceeding. Kaufman v. Boismier, 25 Okla. 252, 105 Pac. 326; Coalgate Co. v. Bross, 25 Okla. 244, 107 Pac. 425, 138 Am. St. Rep. 915.

An examination of the entire record discloses no error prejudicial to the rights of plaintiff.

The judgment should therefore be affirmed.

By the Court: It is so ordered.