FITZGERALD et al. v. TERRY et al.

No. 30007. March 17, 1942.

*123 P. 2d 683.*

Garrett & Harlan, of Mangum, for plaintiffs in error.

Hollis Arnett, of Mangum, for defendants in error.

HURST, J. This is an action by plaintiffs, Marie Fitzgerald and Oscar M. Johnson, to establish and enforce a trust conveyance made by the defendant Paulina Law to the defendant Tillman Terry, trustee, to cancel two subsequent trust conveyances between the same parties, for an accounting, and for an injunction. Plaintiffs were sole beneficiaries under the first trust conveyance, but Harding College was made a beneficiary under the second and third.

Paulina Law is the aunt of plaintiffs, and resides in Granite, Okla. Her only son died in Roanoke, Va., in September, 1937. She was at that time nearly 90 years of age. Tillman Terry was her friend and business adviser, and at her request he and his wife took her in their car to Roanoke. The son left a will, by the terms of which his property, consisting of money, stocks, and bonds, was left to Paulina Law. While Paulina Law was in Roanoke, and prior to the burial of her son, the executor of his will, E. A. Turner, advised her to make her will, giving as a reason that he feared that the ordeal to which she was being subjected might cause her death due to her advanced age. She executed a will at that time. At Turner's suggestion she consulted James P. Woods, a lawyer in Roanoke, and executed a second will prepared by Mr. Woods. After her return to Granite, Turner mailed to Terry the first trust agreement, which had been prepared by Mr. Woods without consulting her. She and Terry executed

this instrument, and the property left by her son, which appears to have been her entire estate, was turned over to Terry as trustee. By the terms of this instrument all of her property was, without consideration, conveyed to Terry as trustee, a designated amount to be paid to Paulina Law each month; her living expenses and any expense due to illness were to be paid by the trustee; a marker was to be erected on the grave of the son; her funeral expenses and a tombstone for her grave were to be paid for at her death; and the remainder of the property, after her death, was to be divided between plaintiffs. The trustee was to be paid as compensation for his services 5 per cent of the funds handled by him.

On December 17, 1938, she executed a second voluntary trust agreement identical in terms with the first, except that it provided that the trustee should pay to Harding College $100 per year during the life of Paulina Law, as a scholarship for a student to be selected by her, and at her death one-half of the remaining property was to go to Harding College as a permanent scholarship endowment and the other half was to be divided between plaintiffs. This trust was accepted by Terry. At the same time she executed a new will, leaving one-half of her property to Harding College and one-half to plaintiffs.

On January 30, 1939, Paulina Law executed a third voluntary trust conveyance and will. These were similar to the second conveyance and will, but in this trust conveyance, for the first time, Paulina Law reserved the right to revoke the trust. This trust was also accepted by Terry.

The trial court found from the evidence that Paulina Law did not understand the legal effect of either of said trust conveyances and that she did not intend to place her property beyond her control, and canceled and set aside all three of them. Plaintiffs alone appeal.

Plaintiffs contend that when a trust is properly created it cannot be revoked by the trustor without the consent of the beneficiaries, unless the power to revoke has been specifically reserved. In support of this contention they cite the general statement of the requisites of a valid trust in 65 C. J. 231, and state that all of said elements are contained in the first trust conveyance, and that the power to revoke the trust not having been reserved in that instrument, Paulina Law could not revoke the trust therein created without their consent. Numerous cases are cited, such as In re Thurston, 154 Mass. 596, 29 N. E. 53, Taylor v. Buttrick, 165 Mass. 547, 43 N. E. 507, Coolidge v. Loring, 235 Mass. 220, 126 N. E. 276, and Anderson v. Kemper, 116 Ky. 339, 76 S. W. 122, holding that when such an instrument contains no reservation of the right to revoke, and no fraud, undue influence, or mistake in connection with its execution is shown, it may not be revoked without the consent of the beneficiaries, and that proof of mistake must be clear and full to justify the reformation or cancellation thereof. Cases holding that a trust deed may not be avoided because the trustor did not know that it did not contain a revoking clause, such as Lawrence v. Lawrence, 181 Ill. 248, 54 N. E. 918, are also cited. Plaintiffs contend that the finding of the trial court above set forth did not justify setting aside the first trust conveyance, under the authorities cited in their brief, and that if a revoking clause had been inserted in the first conveyance, it would have defeated the purpose of the trust, which was to prevent Paulina Law from giving away or dissipating her property.

In Restatement, Trusts, § 333, it is said:

"Where no consideration is paid for the creation of a trust, it can be rescinded or reformed upon the same ground, such as fraud, duress, undue influence, or mistake, as those upon which a gratuitous transfer of property not in trust can be rescinded or reformed. . . . The settlor can rescind a trust created by him as a result of a material mistake. Where no consideration is paid for the creation of the trust, it is sufficient that the settlor was induced by mistake to create the trust, although neither the

trustee nor the beneficiary shared in the mistake or knew of it, since in the case of gratuitous transfer a mistake by the transferor is a sufficient ground for setting aside the transfer, although the mistake was not caused or shared by the transferee and he did not know or have reason to know of the mistake of the transferor."

To the same effect see Bogert on Trusts and Trustees, §§ 43, 992; 65 C. J. 336; 26 R.C.L. 1208.

An instrument may be canceled where by reason of a mistake of law it fails to express the intention of the parties thereto. Board of County Com'rs of Oklahoma County v. Young, 186 Okla. 182, 97 P. 2d 6; Hudson v. Smith, 171 Okla. 79, 41 P. 2d 861; Whittaker v. White, 169 Okla. 336, 37 P. 2d 247; Pomeroy's Eq. Jur. (4th Ed.) § 845.

There is some division in the authorities as to the effect of a mistake of law upon the validity of a trust conveyance. See 38 A.L.R. 998, note; 91 A.L.R. 117, note. But when the cases are analyzed, it appears that those cases holding that relief will not be granted where the creation of the trust was due to a mistake of law fall within the principle stated in Pomeroy's Eq. Jur. § 843, where it is stated that where the agreement made was that which the parties intended, but one or both may have misconceived its legal meaning, scope and effect, equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into the transaction, but which they might or would have had if they had been more correctly informed on the law.

The evidence in the present case is such that the applicable rule is that announced in Pomeroy's Eq. Jur. § 845, and applied in Board of County Com'rs of Oklahoma County v. Young, supra, that equity will grant relief where due to mistake as to the legal effect the conveyance fails to express the intention of the parties. We think the evidence clearly shows, as held by the trial court, that Paulina Law did not intend to divest herself of the legal title or control of her property by the trust conveyance, and that Terry did not consider that she had. On the contrary, it appears that she and Terry intended that Terry should act in the capacity of a guardian of her property, and that she should make no disposition of it, or any part of it, except with his approval, and that she believed the instrument creating the trust was a will, or part of her will. It does not appear that either she or Terry, at the time the instrument was executed, knew the difference between a trust and a guardianship, or that the difference had been explained to them, and it clearly appears that they understood that the property was placed in Terry's name so that he could assist in handling her affairs, which she felt incapable of attending to. The record does not show that Mrs. Law had legal advice as to the effect of the first trust agreement at or prior to the time it was executed. Both Turner and Woods testified that they did not talk to her about a trust agreement or conveyance, but did talk to her about making a will. In his letter to her enclosing the trust agreement, Turner states that he had talked to Woods about her affairs, and says:

"Col. Woods suggested that you appoint some one to act as guardian of your estate to look after your business matters, and relieve you of all that worry and responsibility. At my request, he prepared a paper or agreement, covering the appointment of a 'trustee' who will take care of your necessary funds, pay your bills and look after your personal affairs in general. I will send these papers to Mr. Terry and he can explain them to you."

In his letter to Terry enclosing the trust conveyance Turner uses the terms "guardian" and "trustee" synonymously, and nowhere advised Terry that the title to Paulina Law's property was to be irrevocably vested in him as trustee. Terry transacted no business for her without consulting her. It is clear that both Mrs. Law and Terry understood that Terry was by the trust agreement vested only with control in the nature of a guardianship over her property, and

that they intended nothing more when they executed the trust conveyance, except that on her death Terry could distribute the property without going through a probate proceeding. This is clearly shown by their testimony, and by their conduct after the property was placed in the trustee's hands.

Affirmed.

CORN, V. C. J., and RILEY, BAYLESS, GIBSON, and ARNOLD, JJ., concur. WELCH, C. J., and OSBORN and DAVISON, JJ., absent.