┌ **PASOTEX PETROLEUM COMPANY,**
a corporation, Appellant,

v.

**M. B. CAMERON, Appellee.**
**No. 6240.**

United States Court of Appeals
Tenth Circuit.

June 15, 1960.

Rehearing Denied Aug. 18, 1960.

**64**

George N. Otey, Ardmore, Okl. (R. Rhys Evans, Ardmore, Okl., C. W. Proctor, Houston, Tex., George N. Otey, Jr. and T. N. Jordan, Jr., Denver, Colo., and Otey, Johnson & Evans, Ardmore, Okl., on the brief), for appellant.

Luther Bohanon, Oklahoma City, Okl. (Bert B. Barefoot, Jr., Oklahoma City, Okl., on the brief), for appellee.

Before PICKETT and BREITEN-STEIN, Circuit Judges, and SAVAGE, District Judge.

SAVAGE, District Judge.

This action for reformation of an assignment of an oil and gas lease was brought in the state court of Oklahoma and removed to the United States District Court for the Eastern District of Oklahoma on grounds of diversity of citizenship. The appellee, Mrs. M. B. Cameron, is a citizen of Oklahoma, and the appellant, Pasotex Petroleum Company, is a Delaware corporation with its principal place of business at Houston, Texas.

The assigned lease described by legal subdivision 202.80 acres of land in Love County, Oklahoma, bordering on Red River, a non-navigable stream. A shifting of the course of the river had resulted in adding lands by accretion to the described lands. The acreage gained by accretion was not known and could only be determined by survey. The lease of the lands described by legal subdivision by operation of law conveyed the accreted lands.[1] The assignment of the lease without any reservation or exception likewise transferred the accreted lands.

Equitable relief was sought upon the grounds that the parties agreed that the assignment did not include any accreted lands and that the transfer thereof resulted from a mutual mistake. The pertinent facts relied upon to demonstrate the mutual mistake are not in dispute. Schmulowitz and Gray, residents of San Francisco, were the owners of an undivided two-thirds interest in the mineral rights. The United States had acquired title to the surface for public use as a part of the reservoir of Lake Texhoma. Cameron, who is engaged with her hus-

1. Braddock v. Wilkins, 182 Okl. 5, 75 P. 2d 1139; Johnson v. Butler, 206 Okl. 632, 245 P.2d 720; The Choctaw and Chickasaw Nations v. Cox, 10 Cir., 251 F.2d 733.

band in the oil and gas lease brokerage business, negotiated with Schmulowitz for purchase of the lease for $25 per acre. It was her belief that the owners might have gained substantial acreage by a change in the river's course. The lease was executed on November 8, 1957, without any reference therein to accreted or riparian lands. As found by the trial court, the accreted lands were included by force of law. It is clear, however, that Cameron, unaware of the settled Oklahoma law, assumed that the accreted lands were not conveyed because there was no special reference thereto in the oil and gas lease.

Cameron promptly contacted A. A. Beasley in an effort to sell the lease to Pasotex. As sole representative of the land and legal department of Pasotex in Oklahoma, it was Beasley's primary duty to purchase oil and gas leases. Cameron had previously dealt with him in such capacity. She explained to Beasley that she had been unable to obtain the "riparian rights"; that she thought the lessors had mineral rights in and under accreted lands; that she intended to make further efforts to lease the added lands and have a survey made and that, if successful, she would give him an opportunity to purchase such lease. He agreed to purchase the lease at $50 per acre with the understanding that lands gained by accretion were not included. He wrote a letter to Cameron dated November 12, 1957, confirming his agreement to purchase the lease without the "riparian rights".

Both Cameron and Beasley were unfamiliar with the crucial rule of law in Oklahoma. Each believed that title to riparian lands gained by accretion did not pass unless specifically included in the instrument of conveyance. Beasley prepared the assignment of the lease. He did not insert a provision therein excepting the accreted lands because he thought it unnecessary to do so. He did not omit any language which he intended to insert in the assignment. The only mutual mistake was a misconception of the legal effect of the oil and gas lease

and the assignment as drafted. Stated otherwise, the mutual mistake is to be found in the assumption that the lease did not cover the accreted lands.

On November 13, Beasley delivered the assignment to Cameron together with a draft which he had also prepared drawn on Pasotex. In compliance with instructions, Cameron attached the executed assignment, the recorded lease and bonus receipt to the draft and deposited it in her bank at Gainesville, Texas, for collection at Houston, Texas. The draft was subsequently paid by Pasotex.

In March, 1958, Cameron acquired an oil and gas lease covering the undivided two-thirds interest of Schmulowitz and Gray in the accreted lands. She caused a survey to be made which established that the gained lands consisted of 184.96 acres. A sale of this lease to Gulf Oil Company was agreed upon, subject to approval of title. Gulf made a title requirement that a disclaimer to the accreted lands be obtained from Pasotex. Cameron's request for such disclaimer was refused by Pasotex, and this action followed.

The trial court found that it was the intent of the parties that the accreted lands be excluded from the assignment and failure to insert appropriate language to carry out such intent was due to mutual mistake. It entered a judgment that the assignment be reformed by adding the following, "it is the intention of the parties to specifically exclude from this assignment all rights to the accreted and riparian lands adjoining the property described therein and that said assignment is restricted to the 202.80 acres." From this judgment Pasotex appealed.

Appellant first questions the sufficiency of the evidence to establish a mutual mistake of any kind. In this connection our attention is directed to the rule that the evidence as to the mistake and its mutuality must be clear, unequivocal and convincing. Mere preponderance of the evidence is not enough. The facts must be proved to a moral cer-

tainty.[2] The trial court properly applied this test to the evidence. We agree with the court's finding that the parties made a mutual mistake in the preparation and execution of the assignment of the oil and gas lease and that there was a "clear understanding" that the accreted lands were not to be included. Indeed, the uncontroverted evidence would permit no other finding.

Pasotex next urges that the mistake was of law and not of fact and that such a mistake affords no grounds of relief. An examination of the Oklahoma cases dealing with the subject reveals that the law in this field is clouded with some uncertainty. Pasotex relies principally upon the case of Page v. Provines, 179 Okl. 391, 66 P.2d 7, decided in 1937. In that case both the grantor and the agent for the grantee intended that the grantee acquire only an easement for a right of way. The conveyance was by warranty deed which vested in the grantee fee simple title although the words were added "to be used for road purposes". The grantor sought reformation upon the ground that the deed was executed in the belief by the parties that the language used would cause the land to revert upon termination of its use as a road. The court held that this was "a mere mistake of law, not accompanied by other circumstances demanding equitable relief" and constituted no basis for reformation of the deed.

The only case cited by the court in support of its conclusion is Barnett v. Douglas, 102 Okl. 85, 226 P. 1035, 1038, 39 A.L.R. 188, decided in 1924. There the mutual mistake was in respect to the interest owned by the grantor. It was contended that a deed should be reformed because it was thought that the grantor owned only an undivided one-half interest in the land conveyed whereas he owned the entire property. Relief was denied by the court upon the theory that all parties had full knowledge of the

facts and came to an erroneous conclusion as to their legal effect. The court observed, "such a mistake of law constitutes no grounds for reformation of the deed".

The case of Barnett v. Kunkle, 8 Cir., 256 F. 644, in which it was held that a mutual mistake as to the interest owned by the grantor afforded grounds for reformation of the deed was discussed. This decision was said to be in direct conflict with Campbell v. Newman, 51 Okl. 121, 151 P. 602; Palmer v. Cully, 52 Okl. 454, 153 P. 154; Bell v. Bancroft, 55 Okl. 306, 155 P. 594; Holloway v. Ward, 84 Okl. 247, 203 P. 217, and Watashe v. Tiger, 88 Okl. 77, 211 P. 415, and the court added that it chose to adhere to the rule announced in those cases.

In each of the cited cases the error relied on for reformation was a mutual mistake in the interest owned by the grantor. The mistake resulted from a misconception of the law pertaining to intestate, succession or marital status. In each case, the grantor owned a greater interest than he had thought and executed an instrument conveying all that he owned. This type of mistake is frequently referred to in the cases as a mistake "as to antecedent and existing private legal rights, interests or estates".

In 1942, the court dealt with a similar question in Davis v. Jackson, 192 Okl. 15, 132 P.2d 923, 924, and cited with approval from Barnett v. Kunkle, supra, as follows:

"The deed was given under a mutual mistake of both grantor and grantee as to the extent of Barnett's interest in the land, they both believing that he had only a half interest. * * * A mistake as to the extent of a party's interest in land is a mistake of fact and not of law, although it may be induced by a mistaken view of the law. Pomeroy's Equity Jurisprudence (4th Ed.) § 849. The rule is there stated as follows:

---

2. Setterstrom v. Phelan, 182 Okl. 453, 78 P.2d 415; Wilson v. Olsen, 167 Okl. 527, 30 P.2d 710; Haggard v. Calhoun, Okl.,

294 P.2d 836; Smiley v. Jaggers, Okl., 327 P.2d 652.

" 'Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, or estates, whether of property or contract, and enters into some transaction, for the purpose of affecting such assumed right, interests or estates, equity will grant its relief defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.'

"This rule was expressly approved by this court in Order of United Commercial Travelers v. McAdam, 8 Cir., 125 F. 358, 61 C.C.A. 22, and accurately states the law both in this country and in England."

In addition, the court cited Higgins v. Classen, 176 Okl. 233, 55 P.2d 101, and Clement Mortgage Co. v. Lewis, 122 Okl. 188, 253 P. 88, which it characterized as cases of similar import. Strangely enough, the court adopted as its own the rule approved by the Court of Appeals of the 8th Circuit in Barnett v. Kunkle, which had been expressly rejected in Barnett v. Douglas, without any reference to Barnett v. Douglas, or cases cited therein.

We come next to a discussion of Board of Commissioners of Oklahoma County v. Young, 186 Okl. 182, 97 P.2d 6, 9, decided in 1939, some two years after Page v. Provines. There the court was again confronted with the identical question decided in Page. The facts were strikingly similar. Warranty deeds were executed, although it was intended to vest in the grantee only an easement for highway purposes. In holding that the deeds should be reformed to carry out the intention of the parties, the court stated:

"But the principle governing the facts of this case is stated in Section 845, (Pomeroy's Equity Jurisprudence, 4th Ed.) as follows:

" 'In this instance there is no mistake as to the legal import of the contract actually made; but the mistake of law prevents the real contract from being embodied in the written instrument. In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such errors are those as to the legal effect of a description of the subject matter, and as to the import of technical words and phrases; but the rule is not confined to these instances.'

"This principle has been approved in several cases by this court. Hudson v. Smith, 171 Okl. 79, 41 P.2d 861, and cases therein cited."

Page was not expressly overruled nor was it discussed although the decision is in direct conflict with the rule there announced.

While Board of Commissioners of Oklahoma County v. Young and Davis v. Jackson cannot be reconciled with the earlier cases of Page v. Provines and Barnett v. Douglas, we must assume that the latest expressions of the court represent the present status of the law in Oklahoma. We have carefully considered the later Oklahoma cases in which the foregoing cases have been cited but none of them throw any additional light on our question.[3]

3. Page v. Provines is cited in only two Oklahoma cases, Hicks v. Mid-Kansas Oil & Gas Co., 182 Okl. 61, 76 P.2d 269, 271, and Commercial Standard Ins. Co. v. Suttle, 200 Okl. 321, 193 P.2d 563, 566. But, see Haggard v. Calhoun, Okl., 294 P.2d 836.

Board of Commissioners of Oklahoma County v. Young is cited in Fitzgerald v. Terry, 190 Okl. 310, 123 P.2d 683, 684, where it is said: "An instrument may be cancelled where by reason of a mistake of law it fails to express the intention of the parties thereto. Board

We conclude that the trial court properly interpreted the Oklahoma law to permit granting equitable relief where the intention of the parties has been thwarted by a mutual mistake of law.

■ The arguments presented by Pasotex which relate to the authority of its agent Beasley do not merit extensive discussion. While it is admitted that Beasley had authority to negotiate for the purchase of the lease, it is contended that he did not have either actual or apparent authority to enter into an agreement with Cameron that the assignment was not to include accreted lands. The trial court found that Beasley "had authority to make the kind of deal that he did make".[4] Both Beasley and J. L. Goodwin, his superior to whom he reported at the Houston office, testified that Beasley had been given authority to purchase leases in the area at a price not exceeding $100 per acre. Both testified that Beasley discussed the purchase of the lease with Goodwin over telephone and mentioned the probability that there were accreted lands which were not covered in the lease. In addition, there was conversation about the necessity of obtaining a survey before any deal could be made for the added lands. According to Beasley he told Goodwin "that the assignor stated she was not able to obtain riparian rights and that we were not getting riparian rights, but we were paying $50 per acre." Goodwin's version of such conversation was:

"At that time he said that in order to acquire the Gray lease that it would be necessary to pay Mrs. Cameron an additional consideration, at which time we stated that we could not pay additional consideration * * * due to the fact we had no idea how much acreage she was talking about, whether it was a loss or a gain, and only after a survey could we justify an additional consideration."

Careful examination of the testimony of Beasley and Goodwin convinces us that the trial court finding that Beasley had authority to enter into the agreement with Cameron is not clearly erroneous.

■ But Pasotex relies on the Statute of Frauds as a defense. It is urged that the contract made by Beasley is invalid and unenforceable because the authorization of the agent was not in writing.[5] The short answer to this argument is that Pasotex ratified his actions by keeping the lease. The retention and enjoyment of the benefits of the bargain validated the alleged unauthorized part of the transaction.[6]

The judgment is affirmed.

### On Rehearing.

On petition for rehearing Pasotex insists that we have misconceived the Oklahoma law as authorizing reformation of an instrument of conveyance which, because of a mutual mistake of law, assigns

of Comr's of Oklahoma County v. Young, 186 Okl. 182, 97 P.2d 6; Hudson v. Smith, 171 Okl. 79, 41 P.2d 861; Whittaker v. White, 169 Okl. 336, 37 P.2d 247; Pomeroy's Eq.Jur., 4th Ed., § 845."

4. The court's finding pertinent to the issue of the agent's authority was: "The Court further finds that A. E. Beasley was the agent of the defendant company, that he was the only purchasing agent for the defendant company in the State of Oklahoma at the time, and at the time he worked specifically for the defendant. The Court finds that the plaintiff had previous dealings with A. E. Beasley as the agent of the defendant; that impliedly, if not otherwise, he had the au-

thority to bargain for such oil and gas lease assignment as he deemed necessary; that he had authority to make the kind of deal that he did make; that is, to exclude the accreted and riparian rights from said oil and gas lease assignment. That the defendant cannot say in one breath that A. E. Beasley had authority to purchase the oil and gas lease assignment and then in the next say that he did not have authority to exclude the accreted and riparian lands."

5. 15 O.S.A. § 136.

6. Wasson v. Clymer, 112 Okl. 59, 240 P. 314; Washington v. Colvin, 55 Okl. 774, 155 P. 251.

an interest which the parties did not intend to convey.

We adverted to the uncertain state of the Oklahoma law on this question but concluded that we should follow Board of Commissioners of Oklahoma County v. Young, 186 Okl. 182, 97 P.2d 6, and Davis v. Jackson, 192 Okl. 15, 132 P.2d 923, as the last expressions of the Supreme Court of Oklahoma although thought to be in conflict with its earlier decisions in Barnett v. Douglas, 102 Okl. 85, 226 P. 1035, 39 A.L.R. 188, and Page v. Provines, 179 Okl. 391, 66 P.2d 7. Pasotex argues that the Oklahoma court has indicated its adherence to Barnett v. Douglas and Page v. Provines in the later cases of Commercial Standard Insurance Co. v. Suttle, 200 Okl. 321, 193 P.2d 563, Fessler v. Fariss, Okl., 304 P.2d 332, and Johnson v. Butler, 206 Okl. 632, 245 P.2d 720. But our question was not before the court for decision in any of those cases.

In Commercial, the action was to recover premiums paid on workmen's compensation and employer's liability insurance policies. Government contracts were awarded to Suttle & Chadwell, a partnership. The agent for Commercial knew that the contracts were let in the name of the partnership and that work was being done by the partnership with Chadwell as the managing partner. Because his company would not issue a policy covering Suttle, the agent wrote the policies to cover Chadwell only. Chadwell paid the premiums from partnership funds. The operations of the partnership under the contracts were covered by similar insurance policies issued to the partnership by Maryland Casualty Company and the premiums on such policies had been paid. The court held that no risk attached under the Commercial policies and that the partnership could recover the premiums paid. Commercial contended that it was entitled to retain the premiums because in the event of loss the policies could have been reformed. The court's answer to this contention was that, if a mistake was made, it was a pure mistake of law which would have been no ground for reformation, citing Barnett v. Douglas and Page v. Provines. In view of the obviously inequitable position of the insurance company and the fact that a hypothetical reformation suit was under consideration, we do not believe the case to be in point.

In Fessler (first cited in the petition for rehearing), the question was whether a mineral deed should be reformed to exclude an inherited fractional reversionary interest. It was asserted that the parties did not intend to convey such an interest and that it was included due to a mutual mistake of fact. The court reviewed the evidence and agreed with the finding of the trial court that the burden of proving a mutual mistake of fact had not been sustained. Barnett v. Douglas was cited and discussed only because of an erroneous forecast by appellants that appellees would rely upon that decision and contend that a mistake of law and not a mistake of fact was made. Instead, the appellees chose to rest on the contention that the trial court's finding was not against the clear weight of the evidence and the court affirmed on that ground.

The inapplicability of Johnson v. Butler is even more apparent. Lot 3 was allotted to Thompson, a half-blood Choctaw Indian, as a part of his homestead allotment. While still restricted against alienation, lands added to Lot 3 by accretion were conveyed by Thompson to the defendant Butler. In 1949, after restrictions had been removed, Thompson conveyed Lot 3, without reservation of accreted lands, to Cunningham and title thereafter vested in plaintiff Johnson. The action by Johnson against Butler was in ejectment and to quiet title. The trial court, upon consideration of evidence that Thompson did not intend to sell and Cunningham did not understand that he was buying the accreted lands, held that title was in Butler. The court reversed holding, (1) that oral testimony as to the intention of the parties at the time the Cunningham deed was executed was inadmissible absent any allegation of fraud, accident or mistake, and (2) that

the deed from the allottee to Butler covering restricted lands was void and Butler was merely a trespasser without even color of title. Johnson v. Butler was not a suit in reformation, there was no allegation of mutual mistake of fact or law and no case pertaining to reformation of written instruments was cited in the opinion.

The application for rehearing is denied.