Lillian M. ARNOLD; Paul G. Scholle; Jennie B. Scott; Bessie F. Robinson, a/k/a Betty J. Robinson; Evelyn F. Frazier; Raymond R. Scholle; Norman L. Scholle; Ruth Fajardo; and Barbara Vormatag, (Plaintiffs below),

and

The Heirs, Executors, Administrators, Devisees, Trustees, and Assigns, immediate and remote, of Robert E. Henthorn, Emma Henthorn, each deceased, (Defendants below) Appellants,

v.

The STATE of Oklahoma, J.R. Williford, Dorothy M. Williford, Eugene R. Sewell, Hallie M. Sewell, Grant Foreman, Ethel L. Foreman a/k/a Ethel L. Dunn, Charles H. Bloodworth, Blue Quail Energy, Inc., and Sooner Energy Services, Appellees.

J.R. WILLIFORD and Dorothy M. Williford, Cross Appellants,

v.

Eugene R. SEWELL, Hallie M. Sewell, Grant Foreman, Ethel L. Foreman a/k/a Ethel L. Dunn and Charles H. Bloodworth, Cross Appellees.

No. 64720.

Court of Appeals of Oklahoma, Division No. 3.

June 23, 1987.

Rehearing Denied Aug. 25, 1987.

Certiorari Denied Jan. 20, 1988.

Richard M. Fogg, Peggy B. Cunningham, El Reno, for co-appellants, Lillian M. Arnold, et al.; Heirs of Emma Henthorn.

Jim A. Lyon, Oklahoma City, for co-appellants, Heirs of Robert E. Henthorn.

Fenton R. Ramey, Yukon, for appellees and cross-appellants, J.R. Williford and Dorothy M. Williford.

Randall L. Sewell, Oklahoma City, for cross-appellees, Eugene R. Sewell and Eura Bloodworth.

HUNTER, Judge:

The appeal before us is from a quiet title action involving ownership of severed min-

eral estates in Canadian County, Oklahoma.

Robert E. and Emma Henthorn homesteaded 144.4 acres in Canadian County, Oklahoma and received a patent to the land described as follows:

North half of the northwest quarter and the Lots six and seven of section Thirteen and the Lot eight of section Fourteen in Township ten north of Range six west of the Indian Meridian Oklahoma, containing one hundred forty four acres and forty hundredths of an acre, according to the Official Plat of the survey of the said land, ...

The southern border of the described property is the Canadian river. Over the years the bed of the river has, at this location, migrated to the south. As the river moved to the south, new land accumulated between the river and the described property, thus increasing the actual number of acres contained in the described property. In March, 1942, the Henthorns deeded the property to the Scriveners. The Scriveners deeded back to the Henthorns, by mineral deed, an undivided one-half interest in and to the minerals. In 1950, after the "subject property" had grown to 297.67 acres through accretion, the Henthorns, by mineral deeds, conveyed an undivided "ten acre mineral interest" and another "five acre interest" to the Sewells; an undivided "five acre interest" to the Bloodworths and an undivided "one acre interest" to the Foremans. In August, 1965, the Henthorns, by mineral deed, conveyed "an undivided 51.2 interest" to the Willifords. This deed contained the legal description of the property and the phrase "containing 144.4 acres, more or less,". In each of the deeds to the Foremans, the Bloodworths and the Sewells the legal descriptions included the phrase, "containing 295 acres, more or less."

Robert Henthorn died intestate on October 17, 1967 and Emma Henthorn died intestate on August 21, 1976. Emma's brother, four sisters and the children of a deceased brother brought this action to quiet title to their claimed mineral interest in certain lands owned by Emma Henthorn at her death. In dispute, in the trial court, was the ownership of the minerals underlying accreted lands which total approximately 155 acres. The respective interests of all appearing Defendants, other than J.R. and Dorothy Williford were not disputed by Plaintiffs. The Willifords had filed an answer and counterclaim alleging a scrivener's error and asking for reformation of their mineral deed and that title be quieted in them. Plaintiffs answered by general denial, and specifically denied that Robert and Emma Henthorn intended to convey riparian rights and accretions to the Willifords and further alleging that the Willifords' cause of action for reformation was barred by the statute of limitations.

The case was tried to the judge on a stipulation of facts except as to testimony of J.R. and Dorothy Williford. The trial judge, after admitting the testimony of the Willifords at trial, reconsidered and, in his letter granting judgment, ruled that there were no " 'equivalent guarantees of trustworthiness' as contemplated by 12 O.S. § 2803 so as to allow introduction of the Willifords' testimony." The trial judge converted all interests conveyed in the various deeds to fractional interests using the original 144.4 acres as the denominator. Judgment was granted for the Willifords and all other defendants. Appellants filed a Motion for New Trial which was overruled and they timely commenced this appeal. The Willifords filed a cross-appeal against certain of the original defendants who are now Cross-Appellees.

The parties stipulated that the original mineral deed to the Henthorns included all accretions and riparian rights. The deed does not contain those terms and the stipulation was apparently entered into based on *Nilsen v. Tenneco,* 614 P.2d 36 (Okl.1980) in which the Supreme Court held that severed mineral interests may be diminished through erosion or accretion. In further support of this proposition is the holding in *Briggs v. Sarkeys, Inc.,* 418 P.2d 620 (Okl. 1966) in which the Supreme Court held that where no exception or reservation of accretions are mentioned in an oil and gas lease, such accretions, becoming a part of the

land to which they have been attached, are covered by said lease.

Appellants presented essentially three propositions in their Petition in Error. These were: (1) the judgment of the trial court was not supported by the evidence and was contrary to law in the manner in which it converted mineral acre interests into fractional mineral interests; (2) error in admitting the testimony of the Willifords; and (3) reformation was barred by the Statute of Limitations. Of these three issues, only two were briefed and the issue regarding the statute of limitations has been abandoned.

The Cross-Appellants presented two issues in their Petition in Error. These were: (1) error of the trial court in the formula used in converting the mineral acre interests into fractional interests (this is essentially the same as Appellants' first issue); and (2) error in ruling that the Willifords' testimony was inadmissible under 12 O.S.1981 § 2803. They contend that this testimony was admissible under § 2804(B)(3) and direct our attention to *Howard v. Jessup*, 519 P.2d 913 (Okla.1974) and *Cleary Petroleum Corp. v. Harrison*, 621 P.2d 528 (Okla.1980) as well as Kuntz on Oil and Gas § 13.6, at page 314.

█ It is unquestioned that parol evidence may be admitted to explain the terms of an ambiguous deed. The Williford deed was ambiguous. However, it was only ambiguous as to the meaning of the term "a 51.2 interest." The trial court properly found that the deed should be reformed by addition of the words "mineral acre." With this finding we agree. The deed was *not* ambiguous as to the Willifords' allegation that it should have granted to them all the Henthorns' remaining mineral interests in the accreted acres. Thus parol evidence offered for the purpose of altering or adding to the terms of the written deed was not admissible. The trial court was correct in refusing to consider this testimony for the purpose offered.

█ Because the trial judge determined that he erred in admitting the testimony of the Willifords and therefore, did not consider it, the Appellants' second issue is without merit. Therefore, the only remaining issue, and the one dispositive of this appeal, is whether the trial court used the correct formula in converting the mineral acre interests into fractional mineral interests. We hold that he did not.

In reaching our conclusion we must determine what interests were conveyed by the Henthorns, and what interest, if any, was retained. The evidence supporting the judgment of the trial court is as follows: the Henthorns originally owned a one-half mineral interest in the 144.4 acres, which equates to 72.2 mineral acres; they conveyed, using the term mineral acre interest, in increments of 10, 1, 5, 5 and 51.2, for a total of 72.2 mineral acre interests. Thus, it would appear that the Henthorns may have intended to convey all the mineral interest they owned in the "subject property." This is further supported by the fact that all the mineral deeds were executed either 15 or 30 years prior to the ruling in *Nilsen v. Tenneco, supra,* and it is possible that the Henthorns did not know, or even consider, that *their mineral interest* had increased by reason of accretion.

This intent is not so clear when *all* the deeds are considered, for all except the Williford deed recite that the mineral interest conveyed is out of 295 acres, more or less, and the Williford deed recites an interest out of 144.4 acres, more or less. Although recitation of the total number of acres in the tract is not part of the granting clause and may normally be treated as surplusage, it is evidence of the knowledge and intent of the grantor. The Henthorns obviously knew, at the time of execution of all the deeds, including the Williford deed which was the latest in time, that the tract of land actually contained 295 acres, more or less.

The three most commonly used methods of stating the quantum of a mineral interest conveyed or reserved are percentage interests, fractional interests and interests denoted by a particular number of acres of minerals. Use of mineral acre interests in a mineral deed to describe the quantum of the interest conveyed often leads to litiga-

tion because of the inability to fix the fractional interest with certainty from the face of the instrument. When this situation is encountered it generally becomes necessary to obtain a staked survey of the property or, more preferably, a correction instrument executed by all parties fixing the quantum of interest in a fractional form. Such an agreement, of course, may be impossible to obtain and the survey cost may be prohibitive. Another possibility is an action for reformation, which being an equitable action in personam, generally requires personal service on all parties.

The mineral deed to the Henthorns, the first Sewell deed and the Foreman deed are clear and unambiguous. The Williford deed is clearly ambiguous as to the term "a 51.2 interest." The second Sewell deed and the Bloodworth deed both have incorrect legal descriptions. Reformation of the mineral deeds to the parties was appropriate to correct the legal descriptions, fix the nature of interest conveyed and to fix their respective fractional interests. However, the trial judge erred in the formula he applied and in granting the defendants any increase in their interests by accretion when the *accretion had occurred prior to the execution of their deeds.*

In converting mineral acre interest into fractional interests, the stated number of mineral acres conveyed is the numerator. The denominator is the *actual* number of acres in the tract *at the time of the conveyance.* Thus, the Sewells own a fractional mineral interest in the "subject property" calculated by the number of mineral acres they own, which is 15, divided by the total number of acres in the tract of land, *at the time of conveyance,* or 297.67 acres. The Bloodworths own a fractional interest of 5 divided by 297.67 and the Foremans a fractional interest of 1 divided by 297.67.

The trial court was correct in reforming the Williford deed to include the words "mineral acre" so that they were conveyed an "undivided 51.2 mineral acre interest" in the "subject property." The alternatives facing the trial court were to rule that the intent was to convey 51.2% of the minerals, which was more than the Henthorns owned, or to try to find 51.2 to be a frac-

tion. Of course neither of these alternatives was viable. Based on the Henthorns' past execution of mineral deeds to the Sewells, Bloodworths and Foremans, the trial court was justified in finding that it was the intent of the Henthorns to include the words "mineral acre" in the Williford deed. However, the trial court erred in ruling that the Willifords were granted a fractional interest in excess of 51.2 divided by 297.67. The use of specified acre interest to denote quantum in a mineral deed, without more, conveys a fractional interest depending on the actual total number of acres in the tract *at the time of the conveyance.*

We hold that the Henthorns conveyed 72.2 mineral acre interests out of their one-half of the minerals under the entire tract, of 297.67 acres; that they owned 148.835/297.67, and thus their heirs are entitled to the remaining 76.635/297.67.

The judgment of the trial court is REVERSED and this matter is REMANDED with directions to quiet title to the minerals in a manner consistent with the holdings announced in this opinion.

**REVERSED AND REMANDED WITH DIRECTIONS.**

HANSEN, P.J., and BAILEY, J., concur.