## HOUSTON BROS. *v.* GRANT.

[73 South. 284, Division B.]

CONVEYANCES. *Property conveyed. Actions.*

A deed conveying one hundred and seventy-five acres of land more or less, by metes and bounds, does not include three hundred other acres which by accretion had attached to the original tract before the conveyance.

APPEAL from the chancery court of Warran county. HON. E. N. THOMAS, Chancellor.

Bill by Mrs. Vera W. Grant against Houston Bros. From a decree for complaint, defendant appeals.

Mrs. Vera W. Grant, appellee herein, sued out an attachment in chancery against appellants as nonresidents of the state of Mississippi, to recover damages to have been sustained by her by reason of the alleged unlawful cutting of timber on a parcel of land in Issaquena county, ownership of which is alleged to be in complaint. The controversy arises out of conflicting claims to about three hundred acres, of accretions to lots 1, 2, 3, 4, and 5 of section 2, township 13, range 9 west, in said county. The accretions were formed by the Mississippi river. When the original government survey was made in 1829 the lots in question bordered upon the Mississippi river and ran approximately northeast and southwest, converging toward the river in a shape somewhat resembling the ribs of a fan. From the date of the government survey to November 11, 1901, the river had gradually shifted its course westward in such way that large accretions had been formed, amounting in area to three hundred thirteen and twenty-four hundred acres. On November 11, 1901, Smith and Moore, then owners, conveyed to M. McN. Grant one hundred seventy-five acres off the south end of these lots, and in their deed the property was described

112 Miss.—30

by monuments, metes, and bounds. At that time the accretions had already formed and the land so added was elevated above the water line in such way as to be the subject of occupancy, and had growing upon it a large quantity of cottonwood, willows and other trees. It appears from the agreed statement of facts that Mr. Grant at the time of this conveyance did not know of the existence of the accretions, and also that Mrs. Grant, who received a conveyance for the one hundred seventy-five acres from her husband, did not know of the existence of the accretions at the time she became the owner of the land conveyed. In 1909 Smith and Moore, Mr. Grant's grantors, executed a conveyance to Dulaney and Foote for all of lots 1, 2, 3, 4, and 5 aforesaid, excepting that portion of said lots theretofore conveyed to Mr. Grant, and stated in the conveyance that all accretions to these lots were intended to be conveyed by this deed to Dulaney and Foote. Thereafter Dulaney and Foote undertook to convey the timber on the accretions to Houston Bros., appellants herein, who entered upon the lands and cut certain trees thereon. The purpose of this suit is to recover the actual value, as well as the statutory penalty for the cutting of the timber. In the deed from Smith and Moore to Mr. Grant the parcel of land conveyed is not only described by monuments, metes, and bounds, but concludes by saying, "being one hundred seventy-five acres, more or less, including all the cleared land on said lots." All of the lots in question were not conveyed, and none of the land was conveyed by Smith and Moore by lot numbers or by governmental subdivisions. The deed had a definite point of beginning, and traces the line from point to point in a way to indicate that the lines had been carefully surveyed for the purposes of this deed. The cause was heard on bill, answer, and agreed statement of facts, and a decree entered in favor of complaint, from which this appeal is prosecuted.

*Dabney & Dabney,* for appellant.

Counsel for appellee states correctly the law of accretion as applied to some cases; but not to the case at bar. When an accretion forms to a lot or section of land it becomes a part of that lot or section just as much so as the north part, the east part, the south part or the west part of the original lot or section. And where an entire lot or section to which an accretion has formed is conveyed, the accretion, being a part of that entire lot, goes with it; so where a lot is conveyed by number, in its entirety, without specifying what particular part or how much of said section or lot it is intended to convey, it carries with it whatever accretion may have formed thereto. That is common-place law, particularly in Mississippi where it has long been the established law of accretion. That, however, is altogether different from carving out of a lot or section a certain number of acres of land with the intention to convey that certain acreage and no more and describing that certain acreage by metes and bounds as in the instant case. In the latter, regardless of whether the particular acreage conveyed is situate in the north, east, west or central part of the lot or section and regardless, also of whether there is any accretion or not to the lot or section, the particular acreage included within the metes and bounds and no more, passes by the deed; and this is more emphatically the intent and purpose of the instrument where, in addition to the land surface within the stated metes and bounds being of a certain acreage by calculation, the acreage is particularly specified, and this acreage so specified agrees exactly with the amount of land within the bounds given in the deed.

None of the cases cited by counsel for appellee are applicable to the case at bar. The leading case—*Jeffries* v. *East Omaha Land Co.*, 134 U. S. 178, 33 L. Ed. 872, cited by appellee, correctly states the law of

accretion applicable to that particular case, but not to the instant case. There the contest was as to the ownership of the accretion to lot 4 in section 21, etc. One side of this lot abutted on the Missouri River; an accretion had formed thereto after a patent had issued to the lot by the United States Government; the lot had changed hands many times and always by the general description of lot 4, section 21, etc. In that case it was held, and correctly so: "Where a water line is the boundary of a given lot that line no matter how it shifts, remains the boundry; and a deed describing the lot by number or name conveys the land up to such shifting water line, etc.,"

Certainly it does, because when the accretion has formed it is as much a part of the lot as any other part of the lot theretofore in existence, and a deed describing the lot as lot unmber 4, carries with it the entire lot, mainland and all. In the case at bar, had the description in the deed from Smith & Moore to Mr. Grant conveyed lots 1, 2, 3, 4, & 5 by their numbers, title to all of the accretion would have passed as a part of those lots; but, inasmuch as a tract of only one hundred seventy-five acres carefully carved out of the total acreage of over seven hundred acres of mainland and accretion was described in the deed by metes and bounds, only the one hundred seventy-five acres included within those calls passed and no more.

Again at page 878, quoting from *Jones* v. *Johnston,* 58 U. S. —, 18 How. 150, 15 L. Ed. 320; "and it justifies the view announced by the circuit court in its opinion that where a water line is the boundary of a given lot that line, no matter how it shifts, remains the boundary, and a deed describing the lot by number or name conveys the land up to such shifting line, etc.,"

Again, p. 879: "All the grantors in the deeds made subsequently to the patent including the patentee,

described the land in their successive deeds as lot 4.''

"But we think that in all the deeds the accretion passed by the description of the land as lot 4. In making every deed the grantor described the land simply as lot 4 and did not, by his deeds, nor does it appear that he has since or otherwise, set up any claim to any accretion. It must be held, therefore, that each grantor, by his deed, conveyed all claims not only to what was originally lot 4, but to all accretions thereto.''

In the instant case not only did Smith & Moore not convey Mr. Grant any of the accretion but only a strip of the mainland carefully described in the deed so as to exclude all else, but afterwards conveyed the accretion to said lots to Dulaney & Foote.

In the case of *Chicago Dock & Canal Co.* v. *Kinzie,* 93 Ill. 415, cited by counsel for appellee, it is held, as in *Jeffries Case, supra,* that: "The boundary line of lot conveyed by its lot unmber" will carry with it as a part of the lot the title to the accretion. That is, where the whole lot is conveyed. The other cases cited by counsel for appellee are equally inapplicable to the case at bar.

Throughout his brief, counsel for appellee fails to distinguish between the cases cited by him where an entire lot is conveyed by its name or number (which, of course, carries the accretion, which is a part of the lot, with it), and the case at bar where a particular tract of land is carved out of a greater tract, the courses run the distance measured, calculations of area made, and all the metes and bounds and acreage fully set forth in the deed of conveyance. In such a case nothing passes by appurtenance and all that does pass is the area within the calls of the deed. We look to *Jones & Marsh* v. *Johnson,* cited in our brief in chief, to support us in this contention.

The case of *Jones* v. *Soulard,* 56 U. S. — —, 24, How. 41, 16 L. Ed. 604, is cited in the *Jeffries Case,*

*supra,* as an authority that the owner of the riparian
lands is also the owner of the accretion that forms
thereto.

Counsel for appellee lingers long on the proposi-
tion which we do not dispute, that where a lot has a
water front when originally platted that water front,
it matters not how much or in what direction it
shifts, is always the boundary of the lot. But because
this water line shifts and vast accretions form be-
tween the original lot and the shifting river, it does
not follow that where a certain number of acres is
carved out of the original tract and conveyed by a
specific description, such specific description can be
stretched to include many hundred acres of valuable
accretion that was in existence at the time of the
conveyance of the particular tract and that had been
in existence for a great many years before. This is
contrary to the decision in the *Jones* v. *Johnson*
case, *supra.* ·

*J. B. Dabney,* for appellee.

While there are a few scattered cases holding that
only such accretions as have formed after the con-
veyance belong to the new owner when not speci-
fied in the deed, the overwhelming weight of authori-
ty is to the contrary.

The leading case is that of *Jeffries* v. *East Omaha
Land Company,* 134 U. S. 178, 33 L. Ed. 872, decided
by the supreme court of the United States in 1890.
In that case the deed described the land as lot 4 in
section 21, of a certain township and range, con-
taining thirty-seven and twenty-four hundredths acres,
and it was shown by the Government Survey
and plat that this lot was bounded on one side by
the Missouri River, and it was held that accretions
that had formed along the boundary passed under
the above description. *New Orleans* v. *United States,*

35 U. S. —,10 Pet. 662, ·717; 9 Pet. 573, 594; *Banks* v. *Ogden,* 69 U. S. — —, 2 Wall, 57, 67, 17 Wall. 818, 821; *Jones* v. *Soulard,* 56 U. S. — —, 24 How. 41, 16 How. 604.

"We come now to consider the question of what passed by the description in the patent of the land as lot 4, containing thirty-seven and twenty-four hundredths acres, according to the official plat of the survey of the land, return to the General Land Office by the surveyor general.

"It is a familiar rule of law that, where a plat is referred to in a deed as containing a description of land the courses, distance and other particulars appearing upon the plat are to as much regarded, in ascertaining the true description of the land and the intent of the parties, as if they had been expressly enumerated in the deed.

"In *St. Paul & P. R. Co.* v. *Schrumeier,* 74 U. S. — —,7 Wall. 272, 19 Wall. 74, this court said: 'Meander lines are run in surveying fractional portions of the public lands bordering upon navigable rivers, not as boundaries of the track, but for the purpose of defining the sinuosities of the banks of the stream, and as the means of ascertaining the quantity of the land in the fraction, subject to sale, and which is to be paid for by the purchaser. In preparing the official plat from the field notes, from meander line is represented as the border line of the stream, and shows, to a demonstration, that the water course, and not the meander line, as actually run on the land, is the boundary.

"We are therefore of opinion that the patent of June 15, 1855, which described the land conveyed as lot 4, according to the official plat of the survey of which a copy is annexed to the bill, marked exhibit A conveyed to the patentee the title to all accretions which had been formed up to that date. *Jones* v. *Johnson,* 59 U. S. — —, 18 How. 150, 15 How. 320;

*Lamb* v. *Rickets,* 11 Ohio, 311; *Giraud* v. *Hughes* 1 Gill & J. 249; *Kraut* v. *Crawford* 18 Iowa, 549.

"The case of *Jones* v. *Johnston,* 59 U. S.——,18 How. 150, 15 How. 320, is cited by the defendant as holding that a grantee can acquire by his deed only the land described in it by metes and bounds, and cannot acquire, by way of appurtenances land outside of such description. But that case holds that a water line, which is a shifting line and may gradually and imperceptibly change, is just as fixed a boundary in the eye of the law as a permanent object, such as a street or a wall; and it justifies the view announced by the circuit courts in its opinion, that where a water line is the boundary of a given lot, that line, no matter how it shifts, remains the boundary and a deed describing the lot by number or name conveys the land up to such shifting line exactly as it does up to a fixed side line. See also *Lamb* v. *Rickets,* 11 Ohio, 311; *Giraud v. Hughes,* 1 Gill. & J. 249; *Kraut* v. *Crawford,* 18 Iowa, 549.''

The Jeffries case has been cited and approved as holding that water line boundary remains such, although shifting in the following cases: Approved in *St. Louis* v. *Rutz,* 138 U. S. 245, 34 L. Ed. 949, 11 St. Ct. 344, deed carried sand bar and accretion; *Hardin* v. *Jordan,* 140 U. S. 380, 35 L. Ed. 433, 11 St. Ct. 811, water line the boundary, carrying title to center of lake; *Mitchell* v. *Smale,* 140 U. S. 414, 35 L. Ed. 445, 11 St. Ct. 822, holding a lake a natural boundary to plaintiff's land, including projecting tongue; *Coburn* v. *San Mateo County,* 75 Fed. 530, boundary extended to high water mark on shifting beach; *Eversan* v. *Waseca,* 44 Minn. 248, 46 N. W. 450, holding title extended to lake beyond meander line; *Denny* v. *Cotton,* 3 Tex. Civ. App. 643, 22 S. W. 126, shifting line of Rio Grande, held to be boundary; *Poynter* v. *Chapman,* 8 Utah, 450, 32 Pac. 692, collecting authorities and holding riparian owner entitled to dry land

made by recession of lake; *Knudsen* v. *Omanson,* 10
Utah, 128, 130, 37 Pac. 250, water line, not meander
line, held boundary; *Whitney* v. *Detroit Lumber Co.,*
78 Wis. 249, 47 N. W. 428, of *Northern, etc. Land Co.,*
v. *Bigelow,* 84 Wis. 166, 54 N. W. 499, 21 L. R. A. 741,
and holding shore of lake the boundary; *Mendota Club*
v. *Anderson,* 101 Wis. 490, 78 N. W. 189, water line of
Mendota lake held actual boundary; dissenting opinion
in *Cooley* v. *Golden,* 117 Mo. 55, 59, 23 S. W. 108, 109, 21
L. R. A. 308, 309, majority holding island formed by
change of courses not property of riparian owner;
*Smith* v. *Furbish,* 68 N. H. 127, 44 Atl. 399, generally.

It will be seen from the foregoing quotations in
the Jeffries case, that where the land surveyed runs in-
to a navigable stream the water line is the boundary
and the meander line is given in the field notes merely
to calculate the area of the tract so that the price can
be fixed; that this boundary shifts with the water line
and that a conveyance of the base land that is silent
as to accretions carried with it all accretions, no mat-
ter when formed. *Chicago Dock & Canal Co.* v. *Kinzie,*
93 Ill. 415; *Kennedy* v. *Municipality No.* 2, 10 La. Ann.
54; *Minto* v. *Delaney,* 7 Or. 337.

The deed from Smith & Moore to Grant was in
general terms and instead of being an attempt to re-
strict the quantity of land conveyed, clearly sought
only to reserve a definite portion of the section lying
most remote from the river.

It is true that the deed to Mr. Grant gives the
area of one hundred and seventy-five acres, more or
less, but this was clearly a mere recital and not an
attempt to confine the area conveyed to that figure,
as argued by counsel: *Bellefontaine Imp. Co. et al.* v.
*Niedringhams, et al.* (Ill. 1899), 55 N. E. 184.

In view of the foregoing we respectfully submit
that no proposition could be more clearly established
than that complainant appellee was and is the owner

of these accretions, in which events she is, of course, entitled to the value of the timber cut therefrom.

STEPHENS, J., delivered the opinion of the court.

Our construction of the deed from Smith and Moore to Malcom McN. Grant leads to the conclusion that the learned chancellor erred in rendering a decree in favor of appellee as complainant in the court below. The deed by which she claims conveys a definite, well-defined parcel of land. To designate the area conveyed the draftsman of the deed makes use of compass and chain, and traces the definitely surveyed line. The deed states upon its face that it conveys "one hundred and seventy-five acres more or less." This fact is not controlling, but persuasive. At the time this deed was executed the large body of ground formed by accretions was clearly above the water line, and had been formed so long that valuable merchantable timber stood upon it. The accretions formed a parcel of land much larger than the area conveyed by the deed in question. For purposes of this we must assume that Smith and Moore were the legitimate owners of the three hundred and thirteen and twenty-four hundredth acres, and in conveying their land they had a perfect right to convey only such portion as they wanted to convey. The deed discloses upon its face an intention to convey a definite parcel of land, and not to convey the accretions. The intention of the deed should, of course, govern. If the grantors had conveyed by lot numbers or by governmental subdivisions, the case would be different. The deed to Grant nowhere states that the water line is a boundary, and, according to the definite description, no line run or described in the deed is in fact the water line. The water nowhere touches the one hundred and seventy-five acres particularly described. The case is therefore differentiated from the cases relied

upon by counsel for appellee. It is contended for appellee that appellant's timber deed covers accretions to Carolina Landing Plantation, and does not include the accretions in controversy. But this is not a controversy between appellants and the grantors of the timber rights. Appellee, as complainant, was obliged to show title, or at least actual possession. She stood upon her title but failed to prove it. It is stated in *Jones et al.* v. *Johnston,* 18 How. (59 U. S.) 150, 15 Law Ed. 320:

"Any past accretions belonged to the then owner, and whoever sets up a title to them must show a deed of the same, as in the case of any other description of land."

The opinion at another point observes that:

"A grantee can acquire by his deed only the lands described in it by metes and bounds, and with sufficient certainty to enable a person of reasonable skill to locate it, and cannot acquire lands outside of the description by way of appurtenanec or accession."

The Arkansas court, in the case of *Towell et al.* v. *Etter et al.,* 69 Ark. 34, 59 S. W. 1096, quotes from Gould on Waters (3d Ed.), par. 186, and then states:

"That is to the effect that a vendee is entitled to accretions to land made after his purchase, but not to those made before, unless the accretions are expressly conveyed" (citing, also, *Jones* v. *Johnston, supra*).

It is said by the Louisiana court in *Barre* v. *City of New Orleans,* 22 La. Ann. 613:

"If, at the time of the sale of riparian land, the alluvion attached has attained a sufficient elevation above the waters to be susceptible of private ownership, the alluvion does not pass with the land, unless so expressed."

This in no wise conflicts with the rule clearly announced by the supreme court of the United States in other cases that a description by a lot number as designated on the government survey will carry accre-

tions already formed. That is not the case here. It follows that the decree of the court below should be reversed, and a decree entered here in favor of appellants, dismissing the bill.

Reversed, and decree here for appellants. ·

*Reversed.*