## BRADDOCK v. WILKINS.

No. 27782. Feb. 1, 1938.

Edwards & Robinson and Robinson & Oden, for plaintiff in error.

C. C. Wilkins, for defendant in error.

WELCH, J. This is an appeal from a judgment of the district court of Love county quieting title to certain riparian lands as against the plaintiff in error and in favor of the defendant in error. The parties appear in the same relative position here as in the court below. Plaintiff's assignments of error may be considered under the one assignment that the court erred in not rendering judgment for the plaintiff. There is no dispute as to the facts.

In 1898 a government survey was made of the locality wherein the lands involved herein are located, and in that survey lots 1 and 2 of section 26, township 8 south, range 2 west of the Indian Base and Meridian, were shown to be bordered on the south by a meander line along Red river. In 1908 the river changed its channel a considerable distance to the south. The land involved herein is that land between said meander line as it existed in 1898, as shown by the government survey of 1898, and the present river channel.

Both parties claim title through one C. H. Whittington. Lots 1 and 2 were sold as un-allotted Indian land, and in 1917 a deed was issued by the Choctaw and Chickasaw Nations to one Smith, who thereafter, and in the same year, issued a deed to C. H. Whittington. The pertinent portion of the description in the unallotted land deed reads:

"* * * Lots one (1) and two (2) of section twenty-six (26) township eight (8) south, range two (2) west of the Indian Base and Meridian, in Oklahoma, containing one hundred fifty and 20/100 (150.20) acres, more or less as the case may be, according to the United States Survey thereof."

The deed from Smith to C. H. Whittington contains an identical description.

In 1921 C. H. Whittington mortgaged lots 1 and 2 and other property. The pertinent portion of the description in the mortgage reads:

"* * * and Lots one (1) and two (2) of section twenty-six (26) township eight (8) south, range two (2) west of the Indian Meridian, and containing (250.20) acres, with all the improvements thereon and appurtenances thereunto belonging. * * *"

The plaintiff deraigns his title through this mortgage and contends that this description passed title to the controverted lands.

The defendant obtained a deed from C. H. Whittington to all the accretions to lots 1 and 2, being described as the land

lying between the south boundaries of lots 1 and 2 as surveyed, and the present banks of the water channel of Red river. This deed was executed in 1927.

It is noted that the description in the mortgage does not contain the words "according to the government survey"; however, the lot numbers are used as established by the government survey.

In the case of Jefferis v. East Omaha Land Co., 134 U. S. 178, 10 S. Ct. 518, 33 L. Ed. 872, it was held that where the government owned lands bordered on a water course and a survey was made of such lands, the line showing the place of the water course, its sinuosities, and distance, is called 'a "meander line," and that meander lines are not run as boundaries of fractional tracts so surveyed, but for the purpose of defining the sinuosities of the banks of the stream and as a means of ascertaining the acreage of such body of land subject to sale and which is to be paid for by the purchases. That such meander line is for the purpose of showing the border line of the stream, but that the water course itself constitutes the real boundary. That where a water line is the boundary of a given lot, that line, no matter how it shifts, remains the boundary and a deed describing the lot by numbers or name conveys the land up to such shifting line exactly as it does up to a fixed side line. Quoting from the body of the opinion:

"These views result in the conclusion that the side lines of lot 4 are to be extended to the river not 'as the river ran at the time of the survey in 1851, but as it ran at the date of the patent in 1855, and that all the land which existed at the latter date, between the side lines so extended and between the line of the lot on the south and the river on the north, was conveyed by the patent.

"All the grantors in the deeds made subsequently to the patent, including the patentee, described the land in their successive deeds as lot 4."

It is there pointed out that none of the deeds made any specific reference to any accretion, but that each deed described the land simply as lot 4. Continuing to quote:

"It must be held, therefore, that each grantor, by his deed, conveyed all claims not only to what was originally lot 4, but to all accretion thereto."

The doctrine announced by the federal court in the Jefferis Case has been followed by several state courts. See DeLong v. Olsen, 63 Neb. 327, 88 N. W. 512;

Towell v. Etter, 69 Ark. 34, 63 S. W. 53; Rue v. Oregon & W. R. Co., 109 Wash. 436, 186 P. 1074; Toppendorf v. Downing, 76 Cal. 169, 18 P. 247.

Following the above-mentioned authorities, it appears that when Smith received the unallotted land deed to lots 1 and 2, he took title to lots 1 and 2 and all accretions thereto, and as each succeeding conveyance contained the same description, including the mortgage, it follows that the mortgage covered not only what was originally lots 1 and 2, but all accretions thereto, the same being the lands involved in this controversy. The sheriff's deed, following foreclosure of the mortgage, and the purchaser's subsequent conveyance to the plaintiff, contained the same land description as that in the mortgage.

The defendant points out that the mortgage contained a statement of a definite number of acres, and it is noted that the unallotted land deed, and each succeeding conveyance of lots 1 and 2, contains the same statement of the number of acres. We apprehend the same doctrine applies with reference to the statement of the number of acres in all these conveyances as would apply in the case of a grant by government patent. We quote from the body of the opinion in Rue v. Oregon & W. R. Co., supra:

"The statement of the number of acres in these patents in no way limits the extent of the grant. To so hold would, in effect, be holding that a meandered line was a boundary line, which, as we have seen, is not the case. The riparian holder of the patent takes all the land to the shore of the lake, though he may thereby obtain a larger acreage than his patent calls for."

The defendant contended that the accretions already formed at the time the mortgage was executed were not covered by the mortgage, since the mortgage contained a statement of acreage not sufficient to include the acreage of the accretions, and in support of this contention cited but one case, Houston Bros. v. Grant, 112 Miss. 465, 73 So. 284, Ann. Cas. 1918E, 243. It is apparent that the trial court was influenced by this case.

The syllabus in this Mississippi case reads as follows:

"A deed, conveying by metes and bounds a tract described as containing 175 acres more or less, does not include some 300 acres of accretions, which had attached to the original tract before conveyance."

The deed in this Mississippi case described the land conveyed by monuments,

metes and bounds, and not by lot numbers or governmental subdivisions. The deed mentioned a definite point of beginning, and traced the line from point to point in a way to indicate that the lines had been carefully surveyed for the purpose of the deed, and according to the definite description every line run and described in the deed was far removed from the water line. In the body of the opinion the court used this significant language:

"If the grantors had conveyed by lot numbers or by governmental subdivisions, the case would be different."

And at the conclusion of the opinion the court said:

"This in no wise conflicts with the rule clearly announced by the Supreme Court of the United States in other cases that a description by a lot number as designated on the government survey will carry accretions already formed. That is not the case here."

For the reason herein set forth, we think the trial court erred in not rendering judgment for the plaintiff. The judgment of the trial court is, therefore, reversed, and the cause remanded, with directions to enter judgment for the plaintiff.

OSBORN, C. J., BAYLESS, V. C. J., and GIBSON and HURST, JJ., concur.