829 So.2d 716 (2002)
Robbie R. Eubanks BURNSED, Appellant,
v.
Bill A. MERRITT and Mary Jacqulyn Merritt, Appellees.
No. 2001-CA-01151-COA.
Court of Appeals of Mississippi.
October 29, 2002.
*717 Darryl A. Hurt, Jr., Lucedale, attorney for appellant.
Gerald Alan Dickerson, Lucedale, attorney for appellees.
Before SOUTHWICK, P.J., BRIDGES, and BRANTLEY, JJ.
BRIDGES, J., for the Court.
¶ 1. Bill A. Merritt and Mary Jacqulyn Merritt own real property in George County, Mississippi, more particularly described as follows, to-wit:
Begin at the Northwest Corner of the Northwest Quarter of the Southeast Quarter of Section 13, Township 1 South, Range 7 West, George County, Mississippi, and thence run South 6 1/4 chains (412 feet) to the POINT OF BEGINNING. Thence run South 6 1/4 chains (412 feet); thence run East 20 chains (1320 feet); thence run North 6 1/4 chains (412 feet); thence run West 20 chains (1320 feet) back to the POINT OF BEGINNING. Containing 12.5 acres, more or less (less 6.5 acres ROW).
¶ 2. Robbie R. Eubanks Burnsed is the record titleholder of the neighboring property located to the south of the Merritts's property. Her mother, Jimmie Nell Eubanks, currently lives on the land, exercising her life estate vested in the property. This land is more particularly described as follows, to-wit:
Commencing at the Southeast Corner of the Northwest Quarter of Southeast Quarter, Section 13, Township 1 South, Range 7 West, George County, Mississippi; thence run North 440 feet; thence run West 577 feet to the POINT OF BEGINNING; thence run West 743 feet; thence run South 440 feet; thence run West 1320 feet to the Northwest Corner of the Southeast Quarter of Southwest Quarter, Section 13, Township 1 South, Range 7 West; thence run South 601 feet to the centerline of the ICG Railroad; thence run in an Easterly direction 1705 feet, more or less, along centerline of said railroad to a point that is South 21 degrees West from the POINT OF BEGINNING; thence run North 21 degrees East 1135 *718 feet, more or less, back to the POINT OF BEGINNING. Containing 27.6 acres, more or less. Being situated in the Southeast Quarter of Southwest Quarter, Northwest Quarter of Southeast Quarter, and Southwest Quarter of Southeast Quarter of said Section 13.
¶ 3. The lands border one another, but the legal descriptions do not depict the properties as touching, leaving a stipulated seventy-five foot discrepancy or hiatus. Both parties referred to this land as "no man's land."
¶ 4. Action began in this case with an order dated August 25, 1999, by the George County Board of Supervisors granting the Merritts a private way of access to their land, apparently across the neighboring land of Burnsed. Burnsed contested the access, causing the board of supervisors to vacate their previous order on August 7, 2000. No appeal was taken of the order; the Merritts filed suit in George County Chancery Court asking the court to establish boundaries and to quiet and confirm their title to the seventy-five foot strip of property in question based upon the doctrine of adverse possession. Burnsed answered and filed her countersuit, seeking to have the court quiet and confirm her title to the seventy-five foot strip of land due to adverse possession by her and her predecessors in title.
¶ 5. The parties stipulated to several facts including the chancellor being able to view the property, that the deed descriptions do not meet causing a seventy-five foot hiatus between the properties and that the issues before the court would be settled by the submission of affidavits to the chancellor in lieu of live testimony. Burnsed, her husband and her mother each submitted an affidavit for consideration while the Merritts submitted one joint affidavit.
¶ 6. The chancellor entered her first judgment on March 13, 2001, dividing the seventy-five feet of property in half, giving the northern thirty-seven and a half feet to the Merritts and the southern half to Burnsed. On March 22, 2001, Burnsed filed a motion for reconsideration or, in the alternative, a new trial, which was overruled except for the court directing a professional surveyor to set the boundaries of the parties. The court entered its final judgment on June 21, 2001, accepting the report and survey by Gerald Moody, dated May 7, 2001.
¶ 7. Burnsed perfected her appeal and comes before this Court citing one issue for review: did the chancellor err in failing to consider the doctrine of adverse possession when she divested the property in question? Finding manifest error, we reverse and remand with respect to the adverse possession of the property. Additionally, we reverse and remand with instructions to have said seventy-five foot strip properly described.

Standard of Review
¶ 8. A determination of a legal boundary is a question of fact for determination by the chancellor. Kleyle v. Mitchell, 736 So.2d 456, 459 (¶ 8) (Miss.Ct.App. 1999). The same standard applies to questions involving the accuracy of surveys. Id. Our scope of review is limited and we will not disturb a chancellor's finding unless we can find that the chancellor committed manifest error. Johnson v. Black, 469 So.2d 88, 90 (Miss.1985).

Legal Analysis

A. Adverse Possession
¶ 9. Under Mississippi law, the burden of proof is on the party asserting adverse possession as the basis for their claim of title. Roy v. Kayser, 501 So.2d 1110, 1111 (Miss.1987). Both parties involved in the case sub judice have asserted *719 to this Court and to the court below that the disputed property is rightfully theirs under the doctrine of adverse possession. As such, each party will have a high burden to meet as proof must establish adverse possession by clear and convincing evidence. Stallings v. Bailey, 558 So.2d 858, 859 (Miss.1990).
¶ 10. There are six essential elements necessary to prevail on a claim of adverse possession. Trotter v. Gaddis and McLaurin, Inc., 452 So.2d 453, 456 (Miss. 1984). Possession must be (1) under a claim of right, (2) actual, (3) open, notorious, and visible, (4) exclusive, (5) continuous and uninterrupted for ten years, and (6) peaceful. Id. Section 15-1-13 of the Mississippi Code provides the legal basis for adverse possession by stating in pertinent part that ten years of actual adverse possession by any person claiming to be the owner for that time of any land, uninterruptedly continued for ten years by occupancy, descent, conveyance, or otherwise, shall vest in every actual occupant or possessor of such land a full and complete title. Miss.Code Ann. § 15-1-13 (Supp. 2001).
¶ 11. "The possession must be sufficient to put another on notice, actual or imputable, of an adverse claim to his property. Without such notice, possession will never ripen into title." Trotter, 452 So.2d at 457. Furthermore, mere possession does not satisfy the open and notorious possession requirements. Craft v. Thompson, 405 So.2d 128, 130 (Miss.1981).
¶ 12. Burnsed bases her adverse possession claim on the existence of an old fence. Jimmie Nell Eubanks, Burnsed's mother, testified that the fence was erected prior to 1942, when she and her husband purchased the property. She also testified that she remembered when the fence was constructed, along with the names of the two men who did the building, and that this fence was to serve as the northern boundary for their property. Eubanks gave further testimony, which was corroborated by both Robbie and John Burnsed, that all of the disputed land up to the fence line was used in the past for the cultivation of crops by family members and is currently used as a pine plantation for tree growth.
¶ 13. As stated, the only attested testimony was submitted by affidavits of the parties. Therefore, the affidavits alone must present the parties' evidence for the fulfillment of the requirements of adverse possession. In addition, the Chancellor, at the parties' invitation, viewed the property. That too, constitutes usable evidence. Miller v. Ervin, 192 Miss. 712, 6 So.2d 910, 913 (1942).

1. Under a claim of right:
¶ 14. Eubanks testified that she and her husband acquired the land in question in 1942. As stated, the land up to the fence had been used by the Eubanks family since 1942 for farming and cultivating. They considered the fence as the boundary line and continue to do so. Our supreme court has long held that the claim of title through adverse possession must be shown by sufficient evidence to fly the "flag on the land, and keep it flying, so that the (actual) owner may see, and if he will that an enemy has invaded his domains, and planted the standard of conquest." Simmons v. Cleveland, 749 So.2d 192, 196(¶ 14) (Miss.Ct.App.1999) (quoting Blankinship v. Payton, 605 So.2d 817, 820 (Miss.1992)). If the Eubanks family planted crops in the past and currently maintained a pine plantation, that would be an act sufficient to put someone on notice of their claim of ownership.
¶ 15. The Merritts's affidavit is silent upon this issue. However, all three affidavits *720 submitted on behalf of Burnsed each state that this is the first land dispute ever, giving notice of the seventy-five foot hiatus. The Chancellor in her findings gave no indication as to what she had viewed regarding the claimed pine plantation.

2. Actual:
¶ 16. "Effective control over a definite area of land, evidenced by things visible to the eye or perceptible to the senses" defines "actual" possession with respect to adverse possession. Blankinship, 605 So.2d at 819-20. Crop cultivation and the planting of a pine plantation along with the continuing use of a fence would be sufficient to satisfy the element of actual possession. Burnsed testified that the fence was partly removed due to the construction of U.S. Highway 98 and that the fence is currently in disrepair. Furthermore, she testified that the fence was grown up with underbrush, evidencing the age of the fence, a statement corroborated by Eubanks.
¶ 17. If the fence enclosed the property for ten years, "title vests in the claimant and possessor, even though the fence was subsequently removed or fell into disrepair." Cole v. Burleson, 375 So.2d 1046, 1048 (Miss.1979). This element is supported by the three affidavits presented for Burnsed. The Merritts's affidavit is silent with respect to this requirement. Again, the Chancellor's view also added to the quantum of evidence.

3. Open, notorious, and visible:
¶ 18. The fence line was clearly visible to the Merritts. The Eubanks' affidavits asserted that the land up to the fence was used for farming Such farming would have been clearly visible to the eye. The previous discussions are also applicable to this requirement and, therefore, this requirement appears to be satisfied by the testimony from the three affidavits submitted on Burnsed's behalf. The Merritts's affidavit is silent with respect to this requirement, and the Chancellor made no reference in her findings to the view that she obtained.

4. Exclusive:
¶ 19. This land was used by the Eubanks family only. Upon the death of Burnsed's father in 1971, Eubanks testified that her brothers began cultivating crops upon the land. Currently, Eubanks has planted a pine plantation on the disputed property. The land has not been used by anyone other than the family for the benefit of the Eubanks family. The Merritts's affidavit does not address this requirement. The extent and age of the pine plantation is not indicated in the affidavits, though the Chancellor would have likely seen this for herself.

5. Continuous and uninterrupted for ten years:
¶ 20. Under Mississippi law, the tacking of years is allowed as long as there is privity of possession existing between the predecessor and the claimant. Walters v. Rogers, 222 Miss. 182, 186, 75 So.2d 461, 462 (1954). Privity may be established or created by conveyance, agreement, or understanding which in fact transfers possession. Id. As we previously stated, Burnsed is the titleholder for the property to the south although her mother has a life estate in the property. However, our supreme court has held that the period of adverse possession by a remainderperson could begin before the life estate was removed. Robertson v. Dombroski, 678 So.2d 637, 641 (Miss.1996). See also Williams v. Woodruff, 374 So.2d 232, 234 (Miss.1974). The ten year period requirement appears to be met.
*721 ¶ 21. The Merritts's affidavits support this. Their affidavit proves the chain of title and, consequently, the privity held by the party based upon conveyance.

6. Peaceful:
¶ 22. The evidence is undisputed that the use of the property was peaceful. The fence was constructed prior to 1942, and the affidavits assert that property has been used by the Eubanks family since the conveyance. The Merritts acquired their property in 1995 and lived without an objection or boundary dispute until the inception of this suit.
¶ 23. The foregoing indicates that though sparse and often conclusory, there was evidence on each point in order to establish possession for Burnsed to the fence line. There is also evidence that we cannot review, namely, the result of the Chancellor's view. What is clear is that for some unexplained reason the Chancellor did not find sufficient possession to establish the old fence as the boundary. In the absence of any statement of even the most general reasons, we cannot determine the basis of that conclusion. Because of our reversal of the Chancellor's ruling for an equal division, as we explain next, we remand for the Court to make such findings of fact as will explain whether what was seen during the viewof which there is no recordaffected the decision, and if so, what that evidence was.

B. The Equal Division of the Property
¶ 24. We find that the chancellor committed plain manifest error when she equally divided the disputed land. As this Court has said before, land disputes are difficult procedures for a chancellor to hear and endure. Kleyle v. Mitchell, 736 So.2d 456, 460-61 (¶ 13) (Miss.Ct.App.1999). However, the chancellor must consider all evidence presented and adjudicate the division based on where the clear and convincing evidence indicates it is to be. Id. To simply divide the property in half is not the proper way to solve the conflict. Id. "Generally, a court is `without power to divest one of title to his property and vest the same in another by judicial fiat....'" Id. (quoting Mahaffey v. First Nat'l Bank, 231 Miss. 798, 815, 97 So.2d 756, 762 (1957)). Unless the Chancellor was determining that the precise middle of the disputed property was the location of possession or some other point of actual division, this was not a proper ruling.
¶ 25. The plain error doctrine grants an appellate court the right to address any matter where a substantial right of a party has been affected. State Highway Commission of Mississippi v. Hyman, 592 So.2d 952, 957 (Miss.1991). The fact that the parties did not argue this point on appeal is of no consequence. This Court appreciates the chancellor's appeal to Solomonic wisdom; however, land in Mississippi that is the subject of a suit to quiet and confirm title is not a baby that can be split. The disputed land south of the fence line would appear to be all the property of Burnsed, or all the property of the Merritts. If it is something else, because of some other observed boundary, or other reason, nothing in the record supports that. Finally, if the Chancellor rejected Burnsed's evidence as being sufficient to show possession, then some presumptions involving unused and undeeded land may have to be applied. If the Chancellor found no meaningful possession, the issue of whether their common grantor may have retained the disputed land is in question.

C. Legal Description Errors
¶ 26. Upon further review of the legal descriptions of the properties herein, *722 we do not find the hiatus that is the basis for this suit to be seventy-five feet in width. Our calculations (and the calculations of the surveyor) find only a fifty-five foot hiatus. On remand, we instruct the chancery court to correct any legal descriptions in a manner that would be consistent with this opinion. The fact that the parties agreed to a seventy-five foot hiatus is inconsequential. If the land does not exist, the parties can not agree to make it exist. The land records must be correct and certain. We direct the chancery court to correct this problem and formulate new and precise legal descriptions according to this ruling.

Conclusion
¶ 27. We reverse the judgment creating a boundary between the parties in the exact center of the disputed tract. We remand for further proceedings. The Chancellor must either determine that there has been possession by one party or the other, or else determine that the strip has not been sufficiently used to have ever divested the last person who did have record title.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF GEORGE COUNTY IS REVERSED AND REMANDED FOR NEW TRIAL. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEES.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR.