# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01790-SCT

*WILLIAM E. MARQUEZ, III*

*v.*

*CHARLES J. IMBORNONE AND JUDITH L. IMBORNONE*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/07/2007 |
| TRIAL JUDGE: | HON. CARTER O. BISE |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WOODROW W. PRINGLE, III |
| ATTORNEY FOR APPELLEES: | VIRGIL G. GILLESPIE |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 09/11/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     The question presented to this Court on appeal is whether water rights, littoral rights in this case, can be alienated and separated from upland property.

¶2.     William E. Marquez, III, filed suit against Joseph B. and Mary T. Fleuriet (the Fleuriets) and Charles J. and Judith L. Imbornone (the Imbornones), seeking a declaratory judgment and other relief.  Marquez purchased real property in Hancock County, Mississippi, from Homequity, Inc., by special warranty deed in 1985.  This deed also conveyed certain littoral or riparian rights to Marquez.  Marquez's property formerly was owned by the

Fleuriets. In 2000, the Fleuriets conveyed certain littoral or riparian rights to the Imbornones by warranty deed. In his complaint, Marquez claimed that the Fleuriets conveyed water rights he owned to the Imbornones.[1]

¶3. The Chancery Court of Hancock County ruled that the riparian rights could be severed from the upland property. After reviewing the deeds, the chancellor determined that Marquez's deed conveyed only a portion of Lot 10, the upland property. The deed also made no reference to portions of Lots 7 and 9, the water lots, and made no mention of riparian or littoral rights. Therefore, the chancellor determined that the Fleuriets had reserved the littoral rights in Lots 7 and 9 to themselves, and consequently, Marquez had no littoral rights in the property. Thereafter, the chancellor's judgment decreed, in part, that the Imbornones, who had bought portions of Lots 7 and 9 with littoral rights from the Fleuriets, were the fee-simple-absolute owners of the littoral rights to the property.

**FACTS**

¶4. In 1964, Richard and Hilda McMahon conveyed certain real property in Hancock County, Mississippi, to the Fleuriets. The warranty deed stated:

> Commencing at a point where the line between Lots 16 and 14, Third Ward, Town of Waveland, Hancock County, Mississippi, intersects the Northwesterly line of a right of way of Front Street, and running thence N. 36° 22' East 250.21 feet to an iron stake for the place of beginning of the lot of land hereby conveyed; thence along said Northwesterly line of right of way of Front Street, N. 36° 22' East 50 feet to an iron stake; thence N. 53° 38' W. 175

---

[1] Only the Imbornones, as appellees, filed a brief, and they are represented by counsel on appeal. The Fleuriets have not filed a brief.

2

feet to an iron stake; thence S. 36° 22' W. 50 feet to an iron stake; thence S. 53° 38' E. 175 feet to the place of beginning.

Being a part of Lot 10, Third Ward, Town of Waveland, Hancock County, Mississippi, as per the present official map or plat of said City made by E. S. Drake, C. E., and filed in July, 1945, in the office of the Chancery Clerk of Hancock County, Mississippi.

> ALSO: Whatever may remain of the land lying immediately in front of said described tract between Front Street and the Gulf of Mexico, or Mississippi Sound, the side lines of which said lots are continuations of the side lines of the lot first above described. Being part of Lots 7 and 9, Third Ward, Town of Waveland, Hancock County, Mississippi, together with all litoral and riparian rights.
>
> Together with all and singular rights, privileges, improvements and appurtenances to the same belonging or in any wise appertaining.

The deed had separate lot numbers for the upland, Lot 10, and for the littoral portion, parts of Lots 7 and 9. In 1975, the Fleuriets conveyed a portion of the same property to Bruce McMahon. The warranty deed stated:

> Commencing at a point where the line between Lots 16 and 14, Third Ward, Town of Waveland, Hancock County, Mississippi, intersects the Northwesterly line of a right of way of Front Street, and running thence North 36 degrees 22 minutes East 250.21 feet to an iron stake for the place of beginning of the lot of land hereby conveyed; thence along said Northwesterly line of the right of way of Front Street, North 36 degrees 22 minutes East 50 feet to an iron stake; thence North 53 degrees 38 minutes West 175 feet to an iron stake; thence South 36 degrees 22 minutes West 50 feet to an iron stake; thence South 53 degrees 38 minutes East 175 feet to the place of beginning.

> Being a part of Lot 10, Third Ward, Town of Waveland, Hancock County, Mississippi, as per the present official map or plat of said City, made by E. S. Drake, C. E., and filed in July, 1945, in the office of the Chancery Clerk of Hancock County, Mississippi.

3

This deed made no mention of littoral rights. Thereafter, in March 1978, Bruce McMahon conveyed this real property to James Hyde. Hyde, in turn, conveyed the property to Elmer and Lucille Jurgensen in June 1978. The Jurgensens conveyed the property to Donald and Elaine Sabesky in 1982. Then, in 1984, James and Emma Hyde conveyed by quitclaim deed a five-foot strip of land to the Sabeskys. This five-foot strip of land extended along Lot 10 to the water and granted all the littoral or riparian rights. The record is silent on when or how the Hydes came into possession of this five-foot strip.

¶5.     Thereafter, the Sabeskys conveyed the property to Homequity, Inc., in December 1984. The deed from the Sabeskys to Homequity conveyed Lot 10 and the five-foot strip obtained by the Sabeskys from the Hydes. In fact, the deed to Homequity simply combined the descriptions of the properties described in the 1982 deed from the Jurgensens to the Sabeskys and the 1984 quitclaim deed from the Hydes to the Sabeskys. The deed to Homequity did not contain any reference to parts of Lots 7 and 9 that the Imbornones claimed were conveyed to them from the Flueriets. Homequity conveyed the property to Marquez in 1985. The special warranty deed stated:

> Commencing at the point where the line between Lots 16 and 14, Third Ward, Waveland, Mississippi, intersects the Northwesterly line of Front Street; and thence run North 36 degrees 22 minutes East along the Northern line of Front Street for 250.21 feet to an iron pin marking the point of beginning of traverse around land surveyed and described below:
>
> Traverse:  From said point of beginning run North 36 degrees 22 minutes East for 50.0 feet to an iron pin; thence run North 53 degrees 38 minutes West for 175.0 feet to an iron pin; thence South 36 degrees 22 minutes West for 50.0 feet to an iron pin; thence run South 53 degrees 38 minutes East for 175.0 feet to the point of beginning; being a part of Lot 10, Third Ward, Waveland[,]

4

Hancock County, Mississippi, as per the official plat of said City on file in the office of the Chancery Clerk of Hancock County, Mississippi.

ALSO: Commencing at the point where the line between Lots 16 and 14, Third Ward, Waveland, Hancock County, Mississippi, Intersects the Northwesterly line of Front Street; thence run North 36 degrees 22 minutes East along the Northern line of Front Street for 245.21 feet to the place of beginning; thence North 53 degrees 38 minutes West 175 feet to a point, thence North 36 degrees 22 minutes East 5 feet to a point; thence South 53 degrees 38 minutes West 175 feet to a point on the Northern line of Front Street; thence South 36 degrees 22 minutes West 5 feet to the point of beginning. Being part of Lot 10, Third Ward, City of Waveland, Hancock County, Mississippi.

Being the 5 feet of Lot 10 adjoining the Westerly boundary line of property acquired by Donald A. Sabesky and wife, M. Elaine Sabesky, by deed dated July 9, 1984, and recorded in Book AA-60, Pages 697-699, Deed Records of Hancock County, Mississippi.

ALSO: (water lot) Whatever may remain of the land lying immediately in front of the tract immediately above described between Front Street and the waters of the Gulf of Mexico, the side lines of which said lot are continuations of the side lines of the lot immediately above described, and being part of Lot 9, Third Ward, Town of Waveland, Hancock County, Mississippi, together with all littoral or riparian rights thereto belonging.

This deed contained a description of the upland Lot 10 and the five-foot strip only. In 2000, the Fleuriets conveyed only the water lots that were part of Lots 7 and 9 to the Imbornones.

**DISCUSSION**

¶6.    In ***Richardson v. Riley***, 355 So. 2d 667, 668 (Miss. 1978), a land-boundary-dispute case, this Court held:

The principle of law with which we are concerned has been repeated by this Court many times. It is that where the chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence. Even if this Court disagreed with the lower court on the finding of fact and might

5

have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong, as stated above.

*Richardson*, 355 So. 2d at 668. *See also Comeaux v. Freeman*, 918 So. 2d 780, 783 (Miss. Ct. App. 2005) ("In boundary disputes, a determination of the legal boundary between properties is a question of fact for the chancellor"); *City of Waynesboro v. McMichael*, 856 So. 2d 474, 477 (Miss. Ct. App. 2003); *Burnsed v. Merritt*, 829 So. 2d 716, 718 (Miss. Ct. App. 2002).

¶7.    "'Littoral rights' are those 'rights concerning properties abutting an ocean, sea or lake rather than a river or stream (riparian).  Littoral rights are usually concerned with the use and enjoyment of the shore.'" *Columbia Land Dev., LLC v. Sec'y of State*, 868 So. 2d 1006, 1012 (Miss. 2004) (citing *Watts v. Lawrence*, 703 So. 2d 236, 238 (Miss. 1997) (quoting Black's Law Dictionary 934)).

¶8.    In *Bayview Land, Ltd. v. State*, 950 So. 2d 966, 988 (Miss. 2006), this Court stated:

> [W]e have consistently held that littoral rights are not property rights per se, but are merely licenses or privileges.  *Columbia Land Dev.*, 868 So. 2d at 1012.  *See also Stewart*, 815 So. 2d at 1163 (citing *Watts v. Lawrence*, 703 So. 2d 236, 238 (Miss. 1997); *Gilich*, 609 So. 2d at 375.  These licenses or privileges are also revocable.  *Stewart*, 815 So. 2d at 1163.

¶9.    In *Barataria Canning Company v. Ott et al.*, 84 Miss. 737, 756; 37 So. 121, 125 (1904), this Court declined to rule on whether littoral rights may be severed from upland property.  Indeed, Mississippi has relatively few cases concerning littoral rights, let alone whether littoral rights can be severed from upland rights.

6

¶10.    In *Gilich v. Mississippi State Highway Commission*, 574 So. 2d 8, 11 (Miss. 1990), this Court reviewed the four corners of a deed to determine property rights and whether a claimant had littoral rights.  This Court stated:

> It is a well settled rule of construction that a deed must be construed as a whole without separating it into its formal parts, and that the intent of the parties be gathered from the language employed.  *Manson v. Magee*, 534 So. 2d 545, 548 (Miss. 1988)[.]  The intent of the parties must be ascertained from the "four corners" of the instrument and construction is limited to the "four corners" of the instrument unless intent is ambiguous or unascertainable.  *Pursue Energy Corp. v. Perkins*, 558 So. 2d 349, 353 (Miss. 1990); *Sanford v. Jackson Mall Shopping Center*, 516 So. 2d 227, 230 (Miss. 1987).

*Id*.; *see also Houston Bros. v. Grant*, 112 Miss. 465, 475, 73 So. 284, 285 (1916).  In *Gilich*, the description of the land described in the deed did not include the sand beaches abutting the Gulf of Mexico, or subsequent littoral rights, south of the conveyed real property, therefore, no taking occurred.  *Id*.

¶11.    Without reiterating the language of the deeds as set forth in the various conveyances of the real property in the "FACTS" section of this opinion, we find that the land conveyed to Marquez by Homequity in the warranty deed contained no language which conveyed littoral rights.  Indeed, the 1964 deed from Richard and Hilda McMahon to the Fleuriets conveyed both upland and water rights to the Fleuriets, as evidenced by the reference to Lot 10 and parts of Lots 7 and 9, respectively.  In 1975, the deed from the Fleuriets to Bruce McMahon referenced only the upland, Lot 10.  The deed made no mention of parts of Lots 7 and 9 or riparian or littoral rights.  Thereafter, Bruce conveyed this real property to  Hyde, and subsequently to the Jurgensens, the Sabeskys, and Homequity, each in turn.  In 1985,

7

Homequity conveyed the land to Marquez. As the record reveals, all of these conveyances described the real property at issue in substantially the same manner as that described in the deed from the Fleuriets to Bruce McMahon. Therefore, Marquez's deed contained no conveyance of any portions of Lots 7 and 9 and no conveyance of any littoral or riparian rights. As a result, we find that, looking at the "four corners" of the deed from Homequity to Marquez, no water rights were conveyed in this 1985 transaction. Accordingly, we find that the chancellor did not err in finding that Marquez owned no littoral rights in the subject property.

## CONCLUSION

¶12.    For the foregoing reasons, the judgment of the Chancery Court of Hancock County is affirmed.

¶13.    **AFFIRMED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**